UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICOLE B.,[1]

                                      Plaintiff,                    DECISION AND ORDER

-vs-

                                                               1:21-CV-0021 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

## I. INTRODUCTION

In January 2021, Nicole B. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). Compl., Jan. 5, 2021, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Oct. 29, 2021, ECF No. 19; Def.'s Mot., Jan. 27, 2022, ECF No. 22. For the reasons set forth below, Claimant's motion for judgment on the pleadings [ECF No. 19] is granted in part, the Commissioner's motion [ECF No. 22] is denied, the Commissioner's final decision is reversed, and the matter is remanded to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) to address the deficiencies in the ALJ's opinion regarding Claimant's left hip impairment.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

A. Claimant's Applications

Claimant filed a DIB application in August 2017, alleging a disability onset date of August 6, 2016. Transcript ("Tr."), 264,[2] June 30, 2021, ECF No. 9. She listed multiple physical and medical conditions that she claimed limited her ability to work: back injury, neck injury, dizziness, severe pain, arm and leg tingling, insomnia, fainting spells, depression, and high blood pressure. Tr. 291. In November 2017, the Commissioner's state agency medical consultant reviewed Claimant's records, and found that the totality of the evidence supported a residual functional capacity finding of light work with several postural limitations. Tr. 137. Claimant's application was therefore denied at the initial level. *Id*.

B. Claimant's Hearings Before the ALJ

After the Commissioner denied her applications, Claimant appeared with counsel on July 25, 2019 for a hearing before an Administrative Law Judge ("ALJ"). Tr. 54. In her opening statement, Claimant's counsel argued that, "[a]s a result of the claimant's cervical and lumbar spine impairments as well as her other injuries related to multiple motor vehicle accidents, she remains unable to work on a regular and continuous basis . . . ." Tr. 73. Indeed, as was evident from her testimony, Claimant attributes many of her

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

conditions to a series of three automobile accidents. The first accident involved an 18-wheeler, and occurred in January 2015. The second accident was in December 2015, which led Claimant to have two spinal fusion surgeries in 2016 and 2017. Tr. 79. The third accident occurred in April 2019. Tr. 80.

Claimant testified that since the time of these accidents, she has been experiencing pain in her lower to mid-back, which goes down into her legs and feet, and that her hip has started to "just give out." Tr. 91–93. Consequently, she uses a cane to brace herself to sit down and get up. *Id.* She has tingling in her fingers which "sometimes . . . makes it difficult . . . to even do something as small as combing [her] hair, because of [her] neck and the motion that [she] can use and [her] hands." Tr. 92. Claimant has also "started having really bad migraines and dizziness" that she is being medicated for, and experiences panic attacks for 15 to 20 minutes at a time, which make her feel like she's having a heart attack. Tr. 93–95. Even on days that she's "feeling okay," Claimant will have to recline or lay down for "easily a couple hours here or there." Tr. 97. At the same time, Claimant can only sit for about 10 or 15 minutes before she has to shift around because she gets stiff, and feels pressure on her lower back and knees. Tr. 83.

With respect to her activities of daily living, Claimant testified that she lives with her daughter in an apartment that requires her to walk up and down "about 15" stairs every day to get to the bedroom. Tr. 73–74. She helps to babysit her granddaughter, but is not alone with her most times because she can't lift the child on her own. Tr. 75. Claimant's ability to take care of her personal needs is limited: she can bathe and dress herself, and use the restroom on her own, but she needs help from her daughter doing things that require reaching her lower extremities, such as washing her feet and tying her

shoes. Tr. 81. She is able to write, do basic math, eat with utensils, and button her clothes. Tr. 85. Nevertheless, Claimant only drives when she has to, doesn't go to the mall anymore because she can't "walk the distance," and uses a motorized chair and cart when she goes grocery shopping. Tr. 75, 82.

Regarding her education and work history, Claimant testified that she graduated high school and did some college coursework. Tr. 76. Claimant began working for the Niagara Falls Housing Authority in November 1996 (Tr. 97) as a resource aide for the family center, but had to switch to a job as an administrative assistant in the modernization department around 2016 (Tr. 77). As a resource aide, Claimant would spend part of her day as a secretary, but would then have to drive seniors or children around in a van, prepare meals, accept deliveries of supplies, clean up, and tutor. Tr. 77. She would have to lift up to 100 pounds, depending upon the needs of the day and the supplies being delivered. Tr. 78. As her condition worsened, Claimant could not continue to do the lifting and all the different things she had to do at the resource building, so she moved to work as an administrative assistant, where she would just basically do "files and things of that sort." Tr. 78. Eventually, however, Claimant's pain prevented her from keeping up with the work, and she actually blacked out on one occasion. Tr. 78. She stopped working altogether in August 2016 (Tr. 95), and formally discontinued her employment with the housing authority in April 2018 (Tr. 97).

In addition to Claimant's testimony, the ALJ also took testimony from an impartial vocational expert (VE) at the hearing. Using the Dictionary of Occupational Titles (DOT), the VE classified Claimant's positions with the housing authority under the job title "Administrative Assistant," which was skilled work that was sedentary as described in the

DOT but heavy as performed, and "Inventory Clerk," which was semi-skilled work. Tr. 99, 103. In response to a series of hypotheticals proposed by the ALJ that included exertional limitations similar to those experienced by Claimant, the VE identified a number of positions available in the national economy. Tr. 99–101. However, the VE testified that the work would be precluded if an individual was not able to maintain on task behavior for at least 90% of the workday, or had more than one unexcused absence per month. Tr. 103–05.

At the conclusion of the hearing, the ALJ ordered Claimant to undergo a further consultative physical examination. Tr. 105. Claimant's original consultative physical examination was done close in time to her second fusion surgery in 2017, and Claimant indicated that her condition had worsened and "the tingling in [her] fingers came back" after she was involved in a car accident in April 2019. Tr. 92.

Accordingly, an additional consultative physical examination was performed by Dr. John Fkiaras, who gave Claimant a prognosis of "fair," and found – among other things – that she had a mild to moderate limitation walking, a moderate limitation standing extending periods, and a moderate limitation sitting extended periods. Tr. 1853. Following Dr. Fkiaras' examination, Claimant's attorney requested a supplemental hearing, which was held in January 2020. Tr. 57.

At the supplemental hearing, Claimant testified that she had been receiving additional treatments since her July 2019 hearing, including commencing a program of physical therapy three times a week for her hip. Tr. 60. "[I]n an abundance of caution," the ALJ admitted additional medical records related to these treatments, which were comprised mainly of visits to Dr. Graham Huckell for her hip, and to her "regular doctor,"

Dr. Cameron Huckell, for her neck and back. Tr. 60. Overall, Claimant believed her condition had worsened because the pain was getting worse, she was having spasms in her lower back several times a day, she was having even greater difficulty sleeping than before, and she had developed a limp. Tr. 61.

C. The ALJ's Decision

In February 2020, the ALJ issued a decision finding that Claimant was not disabled, and therefore did not qualify for DIB benefits before February 19, 2020, but that she was disabled based on Medical-Vocational Rule 201.14 beginning on February 19, 2020. Tr. 48.

To begin with, the ALJ found that Claimant met the insured status requirements for DIB benefits [3] through March 31, 2022. Tr. 37. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of

---

[3] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

August 6, 2016. Tr. 37.

At step two, the ALJ determined that Claimant has had the following severe impairments: degenerative changes of the cervical spine that required an anterior cervical discectomy and fusion (ACDF), degenerative changes of the thoracic spine, degenerative changes of the lumbar spine that required a lumbar fusion, cardiac arrhythmia and hypertension, migraines, and obesity. Tr. 37. In addition, she found that Claimant's medically determinable physical impairments of high cholesterol and Vitamin D deficiency, as well as her mental impairments of anxiety with depression and adjustment disorder, were non-severe. Tr. 37. The ALJ did not discuss Claimant's left hip at step two.

At step three, the ALJ found that the severity of Claimant's physical or mental impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19–20. At steps two and three, the ALJ also performed the "special technique" required under 20 C.F.R. § 404.1520a for all mental impairments,[5] and found that Claimant had mild limitations in her ability to understand, remember or apply information, and in her ability to concentrate, persist, or maintain pace; and no

---

[5] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

limitations in interacting with others, and adapting or managing herself. Tr. 37–38.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Claimant had the residual functional capacity[6] ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [She] can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. She can never work at unprotected heights or with moving mechanical parts. She can tolerate occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, and vibration, but never work in extreme cold or extreme heat. She can tolerate moderate noise. She can frequently bilaterally handle, finger, and feel. She can occasionally bilaterally reach overhead. She requires a cane for ambulation.

Tr. 39.

Based on this RFC, on Claimant's age and education, and on the testimony of the impartial VE, the ALJ found at step four that Claimant was not capable of performing her past relevant work as an administrative assistant and inventory clerk. Tr. 45. At step five, the ALJ noted that prior to the established disability onset date, Claimant was a younger individual age 45-49, but that on February 19, 2020, Claimant's age category changed to an individual closely approaching advanced age. Tr. 45–46. The significance of this observation is that the Medical-Vocational Guidelines direct a finding of "not disabled" for a "younger individual," who is a high school graduate, with no transferable skills but past relevant work that was skilled or semi-skilled; but the Guidelines direct a finding of "disabled" for a "person closely approaching advanced age" with the same qualities and background. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (§ 201.21, § 201.14).

---

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

Consistent with the Medical-Vocational Guidelines, the ALJ found that jobs existed in significant numbers in the national economy that Claimant could have performed until February 19, 2020: a dowel inspector, a table worker, and a food and beverage order clerk. Tr. 47. However, the ALJ also found that Medical-Vocational Guideline § 201.14 directed that Claimant be classified as disabled starting February 19, 2020, the date she moved from a "younger individual" to a "person closely approaching advanced age."

On November 6, 2020, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 8. The ALJ's decision thus became the "final decision" of the Commissioner.

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.'" 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d

Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts only if a reasonable factfinder would have to conclude otherwise. *See Brault*, 683 F.3d at 448. *See also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary*

*of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (a reviewing court should not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review.').

## IV. DISCUSSION

In her motion for judgment on the pleadings, Claimant maintains that the Commissioner's RFC determination is not supported by substantial evidence, and is based on errors of law and fact. Pl. Mem. of Law, 30, Oct. 29, 2021, ECF No. 19-1. Specifically, Claimant argues that the ALJ erred by failing to make any findings regarding Claimant's left hip impairment or her need to nap during the day, and that the ALJ failed to cite substantial evidence to support her finding that Claimant was limited to occasional overhead reaching but could reach in all other directions without limitation. *Id.* at 33–34. She also argues that the ALJ erred by failing to support her RFC determination with opinion evidence from a treating, examining, or reviewing medical source, and by improperly evaluating the opinion evidence of Consultative Medical Examiner Dr. Fkiaras. *Id.* at 37. The Commissioner maintains that the ALJ did not commit legal error in her decision, and that the ALJ's RFC determination was based on substantial evidence. Def. Mem. of Law, Jan. 27, 2022, ECF No. 22-1.

A. The ALJ's RFC Determination

In her papers, Claimant states that she "experienced left hip pain throughout the relevant period, with significantly abnormal findings on x-ray and MRI studies taken in August of 2019, which resulted in several diagnoses" related to her hip. Pl. Mem. of Law at 33. Nevertheless, Claimant observes that "the ALJ excluded Plaintiff's left hip impairment from consideration as a medically determinable impairment," and therefore

11

that it is at best unclear whether the ALJ considered it in formulating Claimant's RFC.[7] *Id.* In response, the Commissioner states that Claimant's position is incorrect because the ALJ's decision expressly recognized Claimant's report of "notable hip pain," and cited to a range of pages in the record that included an interpretation of the MRI of Claimant's hip in August 2019. Def. Mem. of Law, 10, Jan. 27, 2022, ECF No. 22-1. The Commissioner further argues that the record demonstrates that the left hip pain is merely a product of Claimant's lumbar spine impairment, and cites the Second Circuit's decision in *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) for the proposition that where an ALJ broadly cites the record in support of the decision, the ALJ's rationale can be gleaned from the decision. Def. Mem. of Law at 11.

After a thorough review of the record, the Court agrees with Claimant's argument that, under the circumstances of this case, the ALJ's failure to expressly consider Claimant's problematic left hip as a medical impairment constitutes reversible legal error.

*Legal Principles*

If the ALJ determines at step one of the five-step sequential evaluation process that a claimant is "not doing substantial gainful activity," then the regulations require the ALJ at step two to determine whether the claimant has "a medically determinable physical or mental impairment(s) . . . ." 20 C.F.R. § 404.1521 (citing § 404.1520(a)(4)(ii)). A claimant cannot be found disabled unless he or she is able to demonstrate the existence of a medically determinable impairment. § 404.1505(a) (noting that, by law, the definition of "disability" involves the "the inability to do any substantial gainful activity by reason of

---

[7] Similarly, Claimant points out that the ALJ's failure to consider Plaintiff's need to nap during the day impacted her ability to remain on-task for at least 90% of the workday. Pl. Mem. of Law at 33.

any medically determinable physical or mental impairment . . ."). To do so, the claimant must prove he or she has an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." § 404.1521. That is, the impairment must be "established by objective medical evidence from an acceptable medical source." § 404.1521.

*Application*

In the present case, the Commissioner's account of the ALJ's reasoning does not hold up under review. To begin with, it cannot be seriously disputed that the ALJ did not consider Claimant's left hip impairment at step two in the sequential evaluation process. Although the Commissioner now maintains that the ALJ's discussion of Claimant's lumbar spine impairment "encompasses her left hip pain," the ALJ neither mentioned Claimant's left hip nor cited to any medical records reflecting treatment of the hip at step two. Tr. 37–38. Further, not only did Claimant mention her difficulty with her hip at both of her hearings before the ALJ (Tr. 61, 91), but she also presented "objective medical evidence from an acceptable medical source" of a hip impairment. *See* 20 C.F.R. § 404.1521.

Specifically, Claimant submitted records from Dr. Graham R. Huckell that discussed an August 2019 x-ray of Claimant's left hip, which revealed a subchondral cyst, mild to moderate osteoarthritis, and left hip dysplasia. Tr. 1865. Additionally, the records included a "final report" of an August 2019 MRI of Claimant's left hip that also detected a subchondral cyst, as well as prominent arthropathy of the left hip. Tr. 1866. This objective medical evidence led Dr. Graham Huckell to diagnose Claimant with bursitis, osteoarthritis, and internal derangement of the hip, and recommend that she focus on low

impact activities and weight loss, continue to ice and rest the hip, and proceed forward with a left hip bursa injection. Tr. 1866. This evidence is consistent with Claimant's reports of left hip pain, as well as Dr. Cameron Huckell's October 2019 observation that Claimant walked with an antalgic gait favoring her left side. Tr. 1875.

Based on the foregoing evidence, the Court disagrees with the Commissioner's assertion that Claimant's lumbar spine impairment encompasses her left hip pain, and finds that the ALJ committed legal error when she failed to consider Claimant's left hip condition as a medically determinable physical impairment at step two.

Having found error, the Court must consider whether remand is necessary, or the error was harmless. In general, an ALJ commits reversible legal error where effective review of the ALJ's decision is frustrated by a failure to adhere to law and regulations. *Kohler v. Astrue*, 546 F.3d 260, 267 (2d Cir. 2008). However, in an oft-cited summary order in 2013, the Second Circuit found that an ALJ's failure to consider some of a claimant's impairments at step two of the evaluation process was harmless error[8] where the ALJ identified other "severe impairments" at step two, and specifically considered the neglected impairments in subsequent steps. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010)).

After considering the specific circumstances of this case, the Court cannot state with certainty – as the Second Circuit could under the specific circumstances in *Reices-Colon* – that a consideration of Plaintiff's worsening left hip condition as a medically

---

[8] There are some courts in this circuit that have found that the "step two harmless error doctrine" is applicable only to cases involving an error at step two in the ALJ's conclusion on the issue of severity, and that it does not apply where, like here, the ALJ failed to identify a medically determinable impairment, or found that the impairment was not medically determinable. *See Isacc R. v. Kijakazi*, No. 3:20-CV-1172 (ATB), 2022 WL 306364, at *7 (N.D.N.Y. Feb. 2, 2022) (collecting cases). The Court need not take a position on that issue here, because the error was not harmless.

determinable impairment would not have changed the ALJ's adverse determination. *Reices-Colon*, 523 F. App'x at 798. For one, it is not clear that the ALJ recognized Plaintiff's left hip as a distinct musculoskeletal issue, as the only "musculoskeletal issues" that the ALJ expressly identified in her decision related to the cervical and lumbar spine. Tr. 40. Although the ALJ did acknowledge Claimant's "notable hip pain" and "functional range of motion" in the context of Claimant's spine impairments, she made no mention of the x-ray or MRI results of Claimant's hip. Tr. 41. Additionally, she failed to discuss any of the relevant criteria for anatomical joint abnormalities like osteoarthritis, such as "joint space narrowing, bony destruction, ankylosis, or deformity." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(I)(1)(a) (indicating that the hip is considered a "major joint" under the regulations, and listing the relevant criteria for assessment).

Lastly, the Court is mildly troubled by the ALJ's failure in her discussion of the opinion evidence to acknowledge that Claimant was evaluated by two Dr. Huckells: Dr. Cameron Huckell for her back and neck, and – far fewer times – Dr. Graham Huckell for her hip (Tr. 1863–72). While the Court agrees with the ALJ that she need not consider opinions offered by either doctor on issues reserved by the regulations for the Commissioner, the ALJ's failure to distinguish between the two doctors, and to discuss the results of imaging on Claimant's hip performed at the direction of Dr. Graham Huckell, begs the question as to whether the ALJ adequately considered the entire record. It is also not clear whether the ALJ would have arrived at the same conclusion regarding Claimant's residual functional capacity to perform work had she adhered to the regulations. *Kohler v. Astrue*, 546 F.3d at 268.

The Court stops well short of determining here, in the Commissioner's stead, that Claimant's left hip impairment was severe. Nor does the Court find that the ALJ's consideration of the left hip impairment would have or must – as a matter of law – alter her RFC determination. The Court simply finds that the ALJ's exclusion of Claimant's left hip impairment at step two of the sequential evaluation process did not reflect an application of the correct legal standards, and that the Court cannot therefore determine whether the ALJ's RFC determination was supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

### B. The ALJ's Evaluation of Opinion Evidence

The Court will not address Claimant's remaining arguments regarding the ALJ's evaluation of the opinion evidence "because, after evaluating the medical and diagnostic evidence and applying the *de minimus* standard," the ALJ may come to an alternative conclusion at step two, and consequently incorporate her findings into the remaining steps in the evaluation process. *Isacc R.*, 2022 WL 306364 at *8 (quoting *Burgos v. Berryhill*, No. 3:16-CV-1764, 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018)) (internal quotation marks omitted).

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant Nicole B.'s motion for judgment on the pleadings [ECF No. 19] is granted in part, the Commissioner's motion

for judgment on the pleadings [ECF No. 22] is denied, the Commissioner's final decision is reversed, and the matter is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for proper consideration of Claimant's left hip impairment at step two of the sequential evaluation process.

DATED:   March 6, 2023
         Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge